(691 P.2d 1325)
No. 56,447

Nancy B. Oehme, *Appellant,* v. Frederick W. Oehme, *Appellee.*

Opinion filed December 14, 1984.

*Dan H. Myers,* of Myers & Pottroff, of Manhattan, for the appellant.

*Charles D. Green,* of Manhattan, for the appellee.

Before Foth, C.J.; Terry L. Bullock, District Judge Assigned; and Frederick Woleslagel, District Judge Retired, Assigned.

Woleslagel, J.: Nancy Oehme (plaintiff-appellant) appeals from the dismissal of her damage suit filed September 21, 1983, accusing Frederick, her former husband, of fraud in inducing her to enter into a property settlement agreement approved by the court and incorporated in a divorce decree on June 15, 1981. She claims he failed to reveal over one hundred thousand dollars of assets in his possession which she knew nothing about until November, 1982. She seeks compensatory and punitive damages.

She does not ask that the agreement or the judgment approving it be set aside or modified. To the contrary, she affirms the contract and accepts the judgment, but maintains she can pursue this independent tort action.

The trial court noted that Frederick's contentions in that court were the same as we understand them to be now: This is an unauthorized collateral attack on the judgment; if Nancy is to obtain a greater share of the marital property, she must attack the judgment directly under statutes providing relief from judgments—K.S.A. 60-260(b)(3) relating to relief from fraud, or K.S.A. 60-260(b)(6) relating to "any other reason justifying relief from the operation of the judgment."

The journal entry dismissing this suit adopted Frederick's contentions. In addition, it explained that no "specific support is found in Kansas law" for this suit. It also quotes 24 Am. Jur. 2d, Divorce and Separation § 505 (1983), as stating an attack is collateral if it "has an independent purpose other than impeaching or overturning the judgment." The court also reasoned that the divorce action and this action both "have arisen from the same set of facts, *i.e.,* the property accumulated by the parties during the course of their marriage," and it concluded that ending up with two judgments on the same set of facts was neither efficient nor legal.

As we analyze this case the issues are simple and two in number: (1) May a party in Kansas maintain a separate action for fraud in inducing a property settlement agreement incorporated in a divorce decree; and (2) if so, have any circumstances been shown that would bar the action in this case? Answering the first proposition in the affirmative and the second in the negative, we reverse.

In *Bushey v. Coffman,* 109 Kan. 652, 201 Pac. 1103 (1921), the court held that a party to a partially performed contract may affirm it and also sue for fraudulent inducement. We see no legally significant difference in that this contract was fully performed. See also *Hawthorn-Mellody, Inc. v. Driessen,* 213 Kan. 791, 518 P.2d 446 (1974).

According to Frederick, this general principle cannot apply because all facts were litigated in the divorce case and the agreement was incorporated in the judgment. Being incorporated, he says, the contract terminated subject only to court construction of what the contract meant. He seems to conclude that the judgment is all that is left, so any action has to seek a modification of the judgment. These conclusions appear to result from an erroneous interpretation of *In re Estate of Sweeney,* 210 Kan. 216, 500 P.2d 56 (1972), in which the result in the case did turn on interpreting the contract. But the case does not support Frederick's conclusions, as will be shown anon.

Nothing shown us in this appeal gives us any indication that facts relating to the issue of fraud were litigated in the divorce case. The province, and we believe the customary practice, of our trial courts in passing approval on property settlement stipulations is stated in the case of *Cook v. Cook,* 7 Kan. App. 2d 179,

638 P.2d 980, *rev'd* 231 Kan. 391, 646 P.2d 464 (1982). While the two opinions reach incompatible results, they are compatible as to the function of the trial court. By its nature, fraud in the inducement will seldom appear on the face of an agreement; when nothing seems questionable, it would be a rare and unpopular trial judge who looks for and develops facts relative to fraud.

In *National Bank v. Bartges,* 120 Colo. 317, 210 P.2d 600 (1949), the court interpreted Kansas law when a wife pursued her damage suit for fraud inducing a property settlement in a divorce case against her deceased husband's executors. It approved of the trial court's conclusion that "[t]he parties in the divorce case in legal effect withdrew the property division issue from the consideration of the court by their contract of settlement." 120 Colo. at 327. It observed that "[t]he issue of fraud in the procurement of said agreement was not raised by the pleadings in the Kansas court and no evidence was considered on any issue of fraud." 120 Colo. at 327. Nothing has been brought to us indicating that this divorce case was any different in presentation or court inquiry. Facts as to fraud are simply not shown to have been advanced or considered.

Addressing the proposition that court approval of a settlement agreement causes the contract to lose its effect as a contract, we note that before the enactment of K.S.A. 60-1610(b)(3) a trial court would incorporate the agreement on request or pursuant to court inquiry. With the enactment of the statute, incorporation became automatic unless something pointed toward unfairness, improper influence, or fraud. When approved and incorporated by the court, the contract continued to be effective before adoption of the statute. We believe it still does. The certainty of an assertion that it no longer bound the parties was questioned in *French v. French,* 171 Kan. 76, 81, 229 P.2d 1014 (1951). If a question remained after *French,* it was answered by *Thoele v. Thoele,* 176 Kan. 655, 657, 272 P.2d 1082 (1954), when the court held that the agreement "may be sued upon separately and apart from the judgment of the decree."

Two cases decided after enactment of the statute are of like effect — and conclusive. In *In re Estate of Sweeney,* 210 Kan. 216, an executor sought to enforce a child support provision in an incorporated property settlement agreement. The case turned

upon interpretation of the contract; namely, whether the contract contemplated support after the death of the contractor. In reaching its decision the court made two observations: (1) it opined that "the confirmation of the agreement and its merger into the decree does not abolish the contractual aspects of the agreement," and (2) "the effect of the court's confirmation is to create a hybrid in the law having the characteristics of a judgment and retaining the contractual rights of the parties." 210 Kan. at 224. In *Long v. Brooks,* 6 Kan. App. 2d 963, 636 P.2d 242 (1981), we faced a dormant judgment and set aside a contempt finding which necessarily relied on failure to comply with the judgment, since contempt lies only for dishonor of a judgment and not for failure to fulfill a contract. The contract, in fact, was not claimed to be a relevant factor. Our recital of the law then is as clear as we could make it now. "A property settlement agreement confirmed in a divorce decree, while retaining its character as a contract, becomes as well a judgment of the court." 6 Kan. App. 2d 963, Syl. ¶ 1.

The trial judge mentioned that he could find no Kansas case which specifically authorized this suit. Neither have we been directed to one or able to find one, and it appears that this is the first time these exact issues have been raised in the appellate courts of Kansas. In addition to the Colorado case, *National Bank v. Bartges,* 120 Colo. 317, we do find *Hood v. Hood,* 335 F.2d 585 (10th Cir.), *cert. denied* 379 U.S. 915 (1964), which seems equally persuasive. In it, parties divorced in Kansas submitted a property settlement agreement which was approved and incorporated in the decree. The wife later brought a successful damage suit for deceit in the inducement. In affirming the trial court, the 10th Circuit stated, "We are of the opinion, that under the decisions of the Supreme Court of Kansas, the decree . . . should not be construed to have the effect of canceling and wiping out the property settlement part of the stipulation as an operative contract." *Hood v. Hood,* 335 F.2d at 590. It also observed that "[a]n action to recover damages for fraud inducing a contract is founded on tort and not on contract and proceeds on the theory of affirmance of the contract fraudulently procured." *Hood v. Hood,* 335 F.2d at 590.

The argument that this suit is an indirect or collateral attack on the judgment must also fail. For a judgment to be a bar to a new

suit under the doctrine of res judicata, two conditions must be fulfilled. The judgment must have been obtained without fraud or collusion and there must be an identity of the thing sued for. *In re Estate of Reed,* 233 Kan. 531, 535, 664 P.2d 824, *cert. denied* 464 U.S. 978 (1983). See also *Parsons Mobile Products, Inc. v Remmert,* 216 Kan. 138, 531 P.2d 435 (1975), and 24 Am. Jur. 2d, Divorce and Separation § 444 (1983), for similar comments.

Frederick relies on *Blair v. Duncan,* 216 Kan. 718, 533 P.2d 1224 (1975), in which the court affirmed the dismissal of a divorced husband's suit for fraud. The reason for that dismissal, however, was that the issue had already been litigated pursuant to a motion to modify the decree. In this case no such motion has been filed or litigated.

Res judicata is improper here for an additional reason. It was not properly before the trial court or before us now. This suit was filed September 21, 1983, and the motion to dismiss was filed eight days later. But estoppel and res judicata are affirmative defenses and must be affirmatively pleaded. If not so pleaded, they are waived as a defense. K.S.A. 60-208(c); *U.S.D. No. 490 v. Celotex Corp.,* 6 Kan. App. 2d 346, Syl. ¶ 4, 629 P.2d 196, *rev. denied* 230 Kan. 819 (1981).

This brings us to the final proposition urged in support of dismissal; namely, that fraud can be raised only by setting aside the divorce judgment pursuant to K.S.A. 60-260(b). In his brief Frederick states:

"Defendant does not here seek to deny Plaintiff the right to her day in court on the allegations of fraud which she has brought. Defendant only seeks to insure that Plaintiff's remedy is pursued in accordance with the letter and intent of statutory provisions for seeking such relief."

If this assertion seems strange because of the filing of the motion to dismiss, it becomes more so upon realizing that relief under that statute is not available.

Only three parts of K.S.A. 60-260 are material here. In subsection (b)(3) it specifies fraud as an item for which relief may be granted. In subsection (b)(6) it authorizes a motion "for any other reason justifying relief." It also provides that motions under (b)(3) must be brought within one year after the judgment is entered. It contains one additional provision: "This section does

not limit the power of a court to entertain an independent action to relieve a party from a judgment . . . ."

The divorce decree was entered June 15, 1981. This petition alleges the fraud was undiscovered until sometime in November, 1982. This forecloses the use of subsection (b)(3). Subsection (b)(6) allows for filing the motion "within a reasonable time." *Chowning, Inc. v. Dupree,* 6 Kan. App. 2d 140, Syl. ¶ 1, 626 P.2d 1240 (1981), foreclosed the use of (b)(6), however, by deciding the six enumerated grounds for relief — of which fraud, (b)(3), is one — were mutually exclusive.

Independent of K.S.A. 60-260, Nancy always had a right to utilize K.S.A. 60-513(a)(3), which permits this action, brought within two years. She presents a constitutional point which we do not reach as it is unnecessary for the decision we reach.

Reversed and remanded.