NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

BIJEN DYREK, *Petitioner/Plaintiff/Appellant*,

*v.*

CHRISTOPHER DYREK, *Respondent/Defendant/Appellee*.

No. 1 CA-CV 24-0288 FC, 1 CA-CV 24-0818 (Consolidated)

FILED 02-27-2026

Appeal from the Superior Court in Maricopa County
No.  FN2016-090946, CV2022-001596
The Honorable Julie Ann Mata, Judge
The Honorable Erik Thorson, Judge

**VACATED AND REMANDED**

COUNSEL

Dickinson Wright PLLC, Phoenix
By Bennett E. Cooper, Amanda E. Newman, Alexandra Crandall
*Counsel for Petitioner/Plaintiff/Appellant*

The Cavanagh Law Firm, P.A., Phoenix
By Helen R. Davis, Parker C. Bunch
*Counsel for Respondent/Defendant/Appellee*

Rai Duer, P.C., Phoenix
By Peter B. Swann
*Counsel for Respondent/Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Andrew J. Becke joined.

---

**B R O W N**, Judge:

¶1 In these consolidated appeals, Bijen Dyrek ("Wife") challenges two rulings issued by the superior court in separate cases. In the first case, she appeals an order issued by the superior court's family division denying her petition for relief from the parties' consent decree. That petition alleged fraud on the court arising from representations made by her former spouse, Christopher Dyrek ("Husband"), in the parties' settlement agreement. In the second case, she appeals an order issued by the superior court's civil division dismissing her complaint. Her complaint alleged fraudulent inducement and negligent misrepresentation claims against Husband. For the reasons below, we vacate both orders and remand for further proceedings.

¶2 Given the unique procedural posture of these appeals, we emphasize that in Arizona the "single trial court of general jurisdiction is the superior court." *Marvin Johnson, P.C. v. Myers*, 184 Ariz. 98, 100 (1995). The superior court may use specialized designations, but these divisions, departments, or courts are "in-house mechanisms that do not affect the jurisdiction of the superior court." *Id.* at 102. Such designations may use different names (i.e. "probate department" in Maricopa County, "family court" in Pinal County, "Division I" in Coconino County), but jurisdiction lies in the superior court of each county. *See Calcagno v. Ainbinder*, 1 CA-CV 14-0623 FC, 2016 WL 3264116, at *3, ¶ 11 (Ariz. App. June 14, 2016) (mem. decision) ("The family court division of the superior court has the same jurisdiction to hear matters as the civil division of the superior court."). For ease of reference, we use "family division" and "civil division" to describe the relevant proceedings in this appeal.

## BACKGROUND

¶3 Wife petitioned for dissolution of marriage in 2016. During the marriage, Husband was the president of Cable America Missouri, LLC ("CAM") and handled the company's day-to-day operations, including financial matters. He served as one of its "key decision-makers." The

parties owned about one third of CAM, and the value of CAM and the parties' interest was the primary issue in the divorce proceeding.

¶4 The parties hired experts to provide valuations of CAM as of December 31, 2018. Wife's expert estimated the fair market value of the marital community's interest was $4.6 million and the company's full value was nearly $22 million. Husband's expert estimated the fair market value of the community's interest was $1.8 million and the company's full value was between $10-12.5 million. Husband and the co-owners of CAM tried to sell the business in 2015 but did not receive satisfactory offers.

¶5 The parties engaged in private mediation in November 2019, resulting in a Property Settlement Agreement ("PSA"). In the PSA, Husband avowed as follows:

> Husband specifically represents that, as to [CAM], for the period of March 22, 2016 through November 13, 2019, that *he has not been contacted by any person or entity with respect to their expressed interest in purchasing CAM*, is unaware of any such contact to an employee of CAM, *knows of no expressed interest in the purchase of CAM*, has not contacted any third party to solicit the sale of CAM, is unaware of any employee having contacted a third party regarding the sale of CAM, that other than as disclosed in the [divorce proceeding] has not received nor knows of any valuations of CAM, and that no agreements exist between he and the other owners of CAM regarding allocation of potential sales proceeds from a sale of CAM.

(Emphasis added.) The dates Husband referenced reflect the period for reviewing the parties' assets for division, beginning with the date Wife filed for dissolution, March 22, 2016, and concluding on the date of mediation, November 13, 2019. Under the PSA, the parties agreed that Husband would assume sole ownership of the community interest in CAM and Wife would receive other property and an equalization payment of $1.5 million.

¶6 The PSA says that sections I (acknowledgement including Husband's avowal), III (property division), V (tax) and VIII (indemnity) "are merged with the Decree." The PSA also says the decree "and this PSA shall be filed with the Court as 'confidential documents'" and that "neither party shall publicly discuss in any manner [its] specific terms." The family division entered a consent decree, into which the PSA was partially merged, in January 2020.

**¶7**     On December 30, 2021, Husband and CAM's other owners, Eric and Alan Jackson, finalized the sale of CAM to Cable One for $113 million, resulting in a valuation of Husband's one-third interest at approximately $37 million.  Because the transaction revealed a market valuation that was substantially higher than both experts had calculated during the divorce proceeding, Wife filed a complaint (assigned to the civil division) alleging fraudulent inducement and negligent misrepresentation.  She later filed an unopposed motion to file an amended, unredacted complaint under seal a few months later.[1]

**¶8**     The amended complaint alleged in part that Wife "would not have entered into the [PSA] or the Consent Decree, . . . if she knew [] the value of the 33.34% membership interest in CAM was substantially more than $6 million to $7 million."  She also alleged she relied on Husband's "misrepresentations and/or omissions about CAM."

**¶9**     Husband moved to dismiss the amended complaint, asserting that because the property division section of the PSA was merged into the decree, Wife's "only avenue to pursue her purported fraud and misrepresentation claims is in the divorce court, not in this separate and new civil action."  Relying on *LaPrade v. LaPrade*, 189 Ariz. 243 (1997), the civil division held that the merger doctrine required Wife to seek relief in the family division, expressly noted that the family division "has jurisdiction here," and dismissed Wife's claim with prejudice.

**¶10**     Wife moved for a new trial, or in the alternative, to alter or amend the judgment.  While the motion was pending, Wife commenced proceedings in the family division, *infra* ¶¶ 11–17.  Husband notified the civil division that Wife sought relief in the family division, and the civil division denied Wife's motion for a new trial or to alter or amend the

[1]     As best we can tell, each subsequent filing in the superior court that references details of the PSA has been filed under seal or as a confidential document.  The appellate briefing, in both *Dyrek I* and the instant appeal, has been filed under seal.  But neither party sought to seal the minute entry ruling issued by the family division, which includes many details about the PSA and the parties involved.  Putting aside the legal significance of sealed versus confidential records, nothing in this case presents a sufficient basis to override the presumption favoring open records.  *See* Ariz. R. Sup. Ct. 123(c); *London v. Broderick*, 206 Ariz. 490, 492–93, ¶ 8 (2003).  Thus, by separate order we have vacated our prior order sealing the appellate briefing.  *See* Ariz. R. Civ. P. 5.4(h); Ariz. R. Fam. Law P. 17(e).

judgment, emphasizing that Wife's "prospective relief is only before" the family division. Wife timely appealed the dismissal of her tort claims.

¶11            In December 2022, while her appeal was pending, Wife petitioned for relief in the family division under Arizona Rule of Family Law Procedure ("ARFLP") 85(d)(3) for fraud on the court, claiming Husband "intentionally conceal[ed] the true value of the parties' interest in CAM" and "misrepresent[ed] that there were no prospective sales of CAM." Given these misrepresentations, and by asking the court to merge the PSA into its decree, Wife asserted that Husband committed fraud on the court, preventing a "fair submission of the controversy." Husband moved to dismiss the petition under ARFLP 29(a)(6), the equivalent of Arizona Rule of Civil Procedure 12(b)(6). Because Wife had included several exhibits with her petition, the family division explained that ARFLP 29(d) required treatment of Husband's motion to dismiss as one for summary judgment under ARFLP 79 if "matters outside the pleadings" are presented to the court. The family division therefore converted Wife's petition and Husband's motion to a summary judgment proceeding and invited the parties to submit new motions and responses.

¶12            Husband then moved for summary judgment. Rather than responding to the merits of Husband's motion, Wife requested a four-month discovery period under ARFLP 79(d). Wife asserted that (1) neither her Rule 85 petition nor her tort claims "ever advanced to the discovery stage" and (2) Husband's motion for summary judgment raised "copious factual allegations for the first time." She needed discovery of "documents created or exchanged during and after the sale of CAM" to pursue her claim for fraud during the divorce proceeding. Over Husband's objection, and following a hearing on discovery, the family division granted Wife a 90-day discovery window.

¶13            Wife subpoenaed five categories of documents related to the sale of CAM from CAM's co-owners as well as from CAM and its buyer, Cable One. Husband moved to quash the subpoenas, and when she did not receive timely responses, Wife moved to compel responses. Following a hearing on the motion to quash, the family division quashed some categories but allowed discovery to proceed in other categories.

¶14            Wife also took depositions from Husband, and Alan and Eric Jackson (the co-owners of CAM), received declarations from Husband and from Steven Cochran (chief financial officer of Cable One at the time of its purchase of CAM), and obtained emails from Husband to several people discussing CAM. Wife also received documents about the sale of CAM.

¶15 Discovery, considered in context of the divorce proceeding, revealed the following timeline:

- January 16, 2019: Michael Drake, President of Milestone Communications, emailed Husband "to check in and follow up with you as to progress internally to consider testing the market again. Market conditions remain solid." The next day, Husband responded, "We are currently on hold waiting for the several issues outside the company to be resolved." Drake then asked, "Are these the same issues that have been dogging the company for the past several years?" And Husband replied, "Yes, nothing new."

- April 12, 2019: Cochran emailed Husband, identifying himself as the CFO of Cable One, and asked him to meet for lunch.

- April 23, 2019: Husband and Cochran met for lunch, and Cochran explained that Cable One "would be interested in purchasing CAM after appropriate review and discussion." Husband responded that "CAM was not interested in selling at the present time, but that it was possible in the future."

- October 17, 2019: Husband emailed Joe Duggan, a venture capitalist, "Yes, I'm still in the middle of it. As a professional courtesy and as you might be curious, I have attached the summary of the two appraisals for the co. Talk soon."

- October 30, 2019: Husband emailed Eric and Alan Jackson, relaying that he spoke with Phil Spencer, another venture capitalist, who said CAM was "on their radar and they had a bunch of money 'left over,'" "could conduct a very quick process," and Husband told Spencer he would remember him if and when CAM was offered for sale.

- November 12, 2019: Husband emailed Eric and Alan Jackson a paragraph describing Cable One's growth in the cable business which noted Cable One's CEO's focus on "expanding the company's broadband footprint through M&A [merger and acquisition]."

- November 13, 2019: Husband and Wife attend mediation.

- November 15, 2019: Husband and Wife sign the PSA.

- April 21, 2021: Cochran and Husband sign an amended letter of intent containing Cable One's offer to buy CAM for $113 million.

- Dec 30, 2021: Cable One's purchase of CAM is completed.

**¶16** After the discovery window closed, Wife responded to Husband's motion for summary judgment, stating that "facts and documents uncovered in discovery show that [Husband] <u>demonstrably</u> committed fraud on the Court." Wife also filed her own motion for summary judgment, asserting Husband's specific avowal that he had "not been contacted by any person or entity with respect to their expressed interest in purchasing CAM . . . [and] knows of no expressed interest in the purchase of CAM" between March 22, 2016 and November 13, 2019 was fraudulent.

**¶17** The family division heard oral argument on Husband's motion for summary judgment in December 2023. In a minute entry ruling, the family division granted Husband's motion for summary judgment, finding "no genuine dispute of material fact," and that "[n]o material discussions regarding interest, offer, letter [of] intent, proposed terms, price, or agreement" for the sale of CAM occurred during the period of review, and that "the sale of CAM originated after November 2019." This ruling rendered Wife's motion for summary judgment moot. After the court entered final judgment under ARFLP 78(c), Wife appealed.

**¶18** About a month after the family division issued its final judgment, this court vacated the civil division's order dismissing Wife's tort claims. *Dyrek v. Dyrek (Dyrek I)*, 1 CA-CV 23-0237, 2024 WL 1787111, at *2, ¶¶ 9–10 (Ariz. App. Apr. 25, 2024) (mem. decision). This court explained that the civil division erred in deciding it lacked jurisdiction to hear Wife's tort claims and by ruling that Wife's relief was exclusively in the "family court." *Id.* at *2, ¶¶ 7–8. This court added that "the mere fact that merger occurred would not necessarily dispose of this case," and that dismissing Wife's claims for "failure to state a claim upon which relief can be granted" was error because the civil division failed to sufficiently engage with Wife's claims. *Id.* at *2, ¶ 9.

**¶19** On remand, the civil division referred Wife's tort claims to the presiding judge of the family division "for consideration of consolidation" with the proceedings in that division. Wife objected to consolidation, arguing the two cases: (1) had different standards of review, (2) involved different factfinders (a judge for the claims in the family division, and a jury in the civil division), (3) were at "fundamentally different stages, with the Divorce Proceeding on appeal after entry of final judgment while the Civil Case [was] just about to begin discovery," and (4) that a jury trial on her tort claims was likely. The civil division then withdrew the referral for consolidation. Because the family division had denied ARFLP 85 relief, and

7

"[g]iven the findings of merger by this Court and the appellate court [] and given the policy against horizontal appeals," the civil division dismissed Wife's tort claims with prejudice. Wife timely appealed the dismissal.

**¶20**    This court granted Husband's motion to consolidate the two appeals. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶21**    Wife argues the family division erred in granting Husband's motion for summary judgment on her claim for fraud on the court. She also contends the civil division erred in dismissing her tort claims and in holding the merger doctrine confined her only relief in the family division.

### I.    Summary Judgment - Fraud on the Court

**¶22**    Generally, we review the denial of a petition for relief from judgment filed under ARFLP 85 for abuse of discretion. *Duckstein v. Wolf*, 230 Ariz. 227, 231, ¶ 8 (App. 2012). In these unique circumstances, however, we apply the summary judgment standard of review because the family division resolved the case under ARFLP 79, which states that a court may grant summary judgment "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." We determine de novo whether any genuine issue of material fact exists and whether the superior court erred in applying the law, and we will uphold the court's ruling if correct for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996). In conducting our review, we view the evidence and all reasonable inferences in the light most favorable to the party against whom summary judgment was entered. *Perdue v. La Rue*, 250 Ariz. 34, 39, ¶ 16 (App. 2020).

**¶23**    "A consent judgment [or decree] is one that is entered by stipulation of the parties." *Elliott v. Elliott*, 165 Ariz. 128, 133 (App. 1990). Generally, "a party cannot appeal from a judgment to which it consents." *Douglas v. Governing Bd. of Window Rock Consol. Sch. Dist. No. 8*, 221 Ariz. 104, 108–09, ¶ 9 (App. 2009). But fraud is an exception to this general rule. *Id.*; *see also Goggans v. Osborn*, 237 F.2d 186, 189 (9th Cir. 1956) (explaining that when the provisions of a property settlement agreement are approved by the court, "they may not be modified without the consent of the parties unless there was fraud or collusion" involved in the agreement).

**¶24**    A party may seek relief from judgment under ARFLP 85(d)(3) for fraud on the court at any time. *Alvarado v. Thomson*, 240 Ariz. 12, 15, ¶ 16 (App. 2016). Fraud on the court may allow relief where a party has

committed "some intentional act or conduct that has prevented the unsuccessful party from having a fair submission of the controversy." *McNeil v. Hoskyns*, 236 Ariz. 173, 176–77, ¶ 14 (App. 2014) (citation modified). "Fraud on the court is a variety of extrinsic fraud," and "a party may be entitled to equitable relief from a provision of a dissolution decree that is 'procured by extrinsic fraud.'" *Id.* at 177–78, ¶¶ 14, 15 (quoting *Bates v. Bates*, 1 Ariz. App. 165, 168 (1965)). Examples of extrinsic fraud include when "a party obtains a judgment by concealing material facts and suppressing the truth with the intent to mislead the court." *Cypress on Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 299, ¶ 42 (App. 2011); *see also Bates*, 1 Ariz. App. at 168 ("Extrinsic fraud may also consist of deception practiced by the successful party in purposely keeping his opponent in ignorance.").

**¶25**        Relying on *Dockery v. Central Arizona Light & Power Co.*, 45 Ariz. 434 (1935), Husband argues Wife cannot claim fraud on the court because the interest in CAM was at issue during the divorce proceedings. As explained in *Dockery*, a judgment will not be set aside "because it was founded on a fraudulent instrument, or perjured evidence, *or for any matter which was actually presented and considered in the judgment assailed.*" *Dockery v. Cent. Ariz. Light & Power Co.*, 45 Ariz. 434, 451–52 (1935) (quoting *United States v. Throckmorton*, 98 U.S. 61, 66 (1878)). But nothing in this record suggests Wife's fraud on the court claim is based on a fraudulent instrument or perjured evidence presented to the court for resolution of conflicting facts.

**¶26**        In addressing Wife's claim, the family division acknowledged: "Wife asserts the fraud is based on the avowal of [a]n interest in purchasing CAM[,] *which was not before the Court. An avowal within the consent decree do[es] not require the Court to analyze for equity within the agreement.*" (Emphasis added.) The family division's acknowledgement shows Wife's claim does not derive from a matter that was "actually presented and considered" in the consent decree. Indeed, nothing in the PSA required, or even permitted, the court to consider the validity of its contents. *See Dockery*, 45 Ariz. at 451–52.

**¶27**        Husband also relies on *McNeil* to support his position, asserting fraud was proven in that case because a party fraudulently concealed the existence of a completed transaction, as opposed to a potential sale, as contemplated here. In *McNeil*, the divorcing couple made an ARFLP 69 agreement. *McNeil*, 236 Ariz. at 175, ¶ 3. In presenting the agreement to the superior court, the wife concealed material facts that "prevented a fair adjudication" of the post-decree spousal maintenance. *Id.*

at 177, ¶ 19. The facts were not presented to the superior court—instead, a stipulated agreement was presented for approval. *Id.* at ¶ 17. Because the wife knew but did not disclose that the husband had overpaid the pre-decree support payments, the court found "the parties' spousal support agreement 'was shrouded in fraud and misrepresentation at the time of the entry of the Decree.'" *Id.* Explaining that fraud on the court is a "corruption of the judicial process itself," *Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.*, 827 F.2d 984, 986 (4th Cir. 1987), the *McNeil* court held that the wife's failure to disclose overpayments prevented "the court from considering the fairness of [the] agreement," *McNeil*, 236 Ariz. at 177, ¶ 16.

**¶28** Husband argues *McNeil* differentiated between passive concealment of material facts and affirmative conduct about those same facts. We disagree. In *McNeil*, the court drew the distinction based on whether the matter was "directly before the court for resolution." *Id.* at 178, ¶ 23.

**¶29** *McNeil* supports our conclusion that a claim for fraud on the court is available here, at least for the purposes of defeating Husband's summary judgment motion. *See id.* at 177, ¶ 19; ARFLP 79(a) (providing that summary judgment is proper only when "there is no genuine dispute as to any material fact"). Husband and Wife presented their PSA to the family division and asked the court to approve it and partially merge it as part of the consent decree. Husband participated in that request despite knowing (1) his avowal in the PSA regarding contact with possible buyers of CAM was false, and (2) Wife did not have knowledge that CAM's sale was likely in the near future. The family division explained that it had "examined the [PSA] and [found] that it is not unfair, and, in fact, is fair and equitable in all respects." Because the parties arrived at the PSA in private mediation and presented a consent decree to the court, the details of the parties' property were not "directly before" the family division "for resolution"—instead, the court only had the stipulated PSA. Husband's misrepresentation prevented the court from properly considering the fairness of the agreement and "shrouded [the PSA] in fraud and misrepresentation." *See McNeil*, 236 Ariz. at 177, ¶ 17.

**¶30** Finally, granting summary judgment is not appropriate when a genuine issue of material fact is before the court. Ariz. R. Civ. P. 56(a). A reviewing court must view the evidence in the light most favorable to the party against whom summary judgment was entered. *Perdue*, 250 Ariz. at 39, ¶ 16. The family division acknowledged that several possible buyers of CAM contacted Husband during 2019 but determined nonetheless that these contacts amounted to "offhand, informal conversations[] and

networking," and did not find "evidence of terms, negotiations or even a mutual interest in buying and selling by all owners of CAM." In analyzing whether the contacts uncovered by Wife "render[ed] Husband's representations in the PSA false," the court concluded, as of December 2019, there had been no material discussions about an agreement to sell CAM.

**¶31** Husband's avowal, however, was not limited to whether terms of sale had been discussed or negotiated, or whether the discussions could be interpreted as mutual interest in buying or selling CAM. Instead, the issue on summary judgment was whether his express avowal "that for the period of March 22, 2016 through November 13, 2019, that he has not been contacted by any person or entity with respect to their expressed interest in purchasing CAM, . . . [and] knows of no expressed interest in the purchase of CAM," was false. The record plainly confirms that granting summary judgment on this record was error.

## II.    Dismissal of Wife's Civil Claims

**¶32** We review an order dismissing a complaint for failure to state a claim de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 7 (2012). We assume the truth of all well-pled facts and indulge all reasonable inferences from those facts. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008). In her first amended complaint, Wife alleged that Husband committed fraud in the inducement by misrepresenting and omitting pertinent facts relating to the value of CAM. Wife further alleged Husband negligently misrepresented information he provided to Wife in connection with the PSA. Wife argues the court erred when it sua sponte dismissed her complaint.

**¶33** Fraudulent inducement stems from one party entering a contract by justifiably relying on another party's fraudulent misrepresentations. *See John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, 16, ¶ 10 (App. 2014); *Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 610, ¶ 14 (App. 2000) (listing the elements of a claim for fraudulent inducement). "Negligent misrepresentation requires a misrepresentation or omission of a *fact*." *McAlister v. Citibank (Arizona)*, 171 Ariz. 207, 215 (App. 1992); *see also KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 333, ¶ 30 n.7 (App. 2014) (listing the elements of a claim for negligent misrepresentation).

### A.    Merger

**¶34** The civil division declined to analyze Wife's tort claims because the section of the PSA addressing property division, and thereby

CAM and its potential sale, merged with the consent decree. Husband urges us to affirm on the same grounds.[2]

**¶35**     We decline to do so because fraud is one of the well-established exceptions to the doctrine of merger. *See Lusk Corp. v. Burgess*, 85 Ariz. 90, 93 (1958) (recognizing well-settled principle "that a party can not free himself from fraud by incorporating [an integration clause] in a contract"); *Vaughey v. Thompson*, 95 Ariz. 139, 142 (1963) (noting the "rule of merger has several important exceptions," including fraud); *Barnes v. Lopez*, 25 Ariz. App. 477, 480 (1976) (emphasizing that the presence of a merger provision in a contract does not bar proof of fraud in the inducement); *see also Soli v. Soli*, 534 N.W.2d 21, 23 (N.D. 1995) (holding that the doctrine of merger does not bar reopening a property settlement stipulation induced by fraud); *Sicignano v. Dixey*, 2 N.Y.S.3d 301, 304 (N.Y. App. Div. 2015) ("The merger doctrine is inapplicable where . . . there exists a cause of action based upon fraud." (citation modified)); *Star Ins. Co. v. United Com. Ins. Agency, Inc.*, 392 F.Supp.2d 927, 929 (E.D. Mich. 2005) (explaining that a merger clause does not preclude a party from alleging that its assent to the contract was induced through justified reliance upon a fraudulent misrepresentation).

**¶36**     Moreover, though sections of the PSA were merged into the family division's consent decree, that does not preclude Wife from attempting to prove that Husband induced Wife to enter into the PSA by a fraudulent avowal in the PSA. *See Dyrek I*, 1 CA-CV 23-0237, at *2, ¶ 9; *Brietbart-Napp v. Napp*, 216 Ariz. 74, 79, ¶ 13 (App. 2007) ("[W]e determine that whether a separation agreement has merged is of no consequence in determining that the court can reopen its determination that a separation agreement is [or is not] unfair." (citation modified)); *see also Keller v. Keller*, 137 Ariz. 447, 448 (App. 1983) (holding that in the absence of fraud or undue influence, parties to divorce are bound by their own agreements); *Wick v. Wick*, 107 Ariz. 382, 384 (1971) (explaining that a property settlement agreement is valid if it is free from fraud, coercion, or undue influence, the

---

[2]     In the appellate briefing, neither party has provided in-depth analysis on Wife's claim for negligent misrepresentation. We express no opinion on the viability of that claim beyond noting that on this record, dismissal was error because the civil division has yet to substantively engage with Wife's tort claims. *See Dyrek I*, 1 CA-CV 23-0237, at *2, ¶ 9 (concluding that dismissal for failure to state a claim was not ripe for review).

parties acted with full knowledge of the property involved and their rights therein, and the settlement was fair and equitable (citation modified)).

### B. Issue or Claim Preclusion

**¶37** Husband argues that issue or claim preclusion should bar Wife's tort claims. Claim preclusion "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action resulting in a final judgment." *Quinn v. Cardenas*, 256 Ariz. 77, 83, ¶ 21 (App. 2023) (citation modified). Husband asserts that because the family division granted his motion for summary judgment on Wife's claim for fraud on the court, this court should bar Wife's claim for fraudulent inducement. This argument fails because the family division's entry of summary judgment in favor of Husband is vacated. The claim preclusion defense collapses without "a final judgment on the merits." *See Banner Univ. Med. Ctr. Tucson Campus, LLC v. Gordon*, 252 Ariz. 264, 266, ¶ 10 (2022) ("For . . . claim preclusion to apply, there must be a final judgment on the merits.").

**¶38** Issue preclusion "prevents a party from relitigating an issue of fact decided in a prior judgment." *Hancock v. O'Neil*, 253 Ariz. 509, 512, ¶ 10 (2022). Wife's tort claims are not barred by issue preclusion because the civil division has not yet addressed the merits of her claims. After this court remanded Wife's civil case, noting that the civil division "did not sufficiently engage with it," instead of addressing the merits of Wife's claims, the civil division recommended consolidation with Wife's claim in the family division. *Dyrek I*, 1 CA-CV 23-0237, at *2, ¶ 9. When the civil division discovered that Wife's claim in the family division was already on appeal, the civil division dismissed Wife's tort claims a second time on merger grounds. Wife's tort claims are not barred by issue preclusion because they have yet to be "actually litigated." *See Crosby-Garbotz v. Fell*, 246 Ariz. 54, 59, ¶ 19 (2019).

### C. Intrinsic or Extrinsic Fraud

**¶39** Husband argues Wife's claim for fraudulent inducement is unavailing because the fraud she asserts should be classified as intrinsic fraud.[3] *See Roberson v. Teel*, 20 Ariz. App. 439, 448–49 (1973) (explaining that

---

[3] Husband relies in part on *Hayden v. Pittendrigh*, 1 CA-CV 11-0424, 2012 WL 1469042 (Ariz. App. Apr. 26, 2012) (mem. decision) to support his argument on intrinsic fraud. Because this is an unpublished memorandum

intrinsic fraud pertains to matters of the judgment itself and does not support a collateral attack upon a valid judgment); *McNeil*, 236 Ariz. at 178, ¶ 23 n.4 ("The classical example of intrinsic . . . fraud is the commission of perjury by a witness. While perjury is a fraud upon the court, . . . [it] is insufficient to justify relief as extrinsic fraud because the materiality of the testimony, and the opportunity to attack it, was open at the trial." (citation modified)).

**¶40** Husband misconstrues the relief Wife seeks from her civil tort claims. She does not seek relief from a final judgment and is not "trying to modify, enforce, or revoke the PSA" in her independent tort action. Instead, she seeks compensatory damages through that action. Such an action is not barred by a distinction between intrinsic or extrinsic fraud. *See, e.g.*, *Oehme v. Oehme*, 691 P.2d 1325, 1326 (Kan. Ct. App. 1984) (holding that a party to a property settlement agreement is not barred from asserting a separate tort action for fraudulent inducement); *Hood v. Hood*, 335 F.2d 585, 590 (10th Cir. 1964) (affirming successful damage suit stemming from a fraudulently induced property settlement agreement because the "action to recover damages for fraud inducing a contract is founded on tort and not on contract").

**¶41** Moreover, "[t]he election-of-remedies doctrine provides that a party who has been fraudulently induced to enter into a contract must choose to either disavow the contract . . . or affirm the contract and sue for damages for breach." *Caruthers v. Underhill*, 235 Ariz. 1, 5–6, ¶ 19 (App. 2014). Just because Wife has pursued a claim for fraud on the court does not mean she is barred as a matter of law in her civil action from pursuing claims for fraudulent inducement and negligent misrepresentation. "[I]f alternative theories of recovery are factually consistent, an [inconsistent theory of the case] does not arise until one of the remedies is satisfied, and therefore consistent remedies may be pursued concurrently even to final adjudication, but the satisfaction of one claim bars the other one." *Id.* at 6, ¶ 20 (citation modified).

### III.    Attorneys' Fees and Costs

**¶42** Husband requests an award of attorneys' fees incurred on appeal under A.R.S. §§ 25-324 and 12-349. Section 25-324 allows a court to award attorneys' fees after consideration of the parties' financial resources and the reasonableness of their positions taken during the litigation. In our

---

decision predating January 1, 2015, it cannot be cited or considered. *See* Ariz. R. Sup. Ct. 111(c)(1)(C).

discretion, we deny his request. Section 12-349 provides that attorneys' fees shall be assessed if an attorney or party engages in any one of several unjustified actions. Because none of them apply, Husband's request is denied. As the successful party on appeal, Wife is awarded taxable costs subject to compliance with ARCAP 21.

## CONCLUSION

**¶43** We vacate the family division's order granting summary judgment in Husband's favor on Wife's ARFLP 85(d)(3) petition for relief for fraud on the court. We also vacate the civil division's order dismissing Wife's tort claims. We remand these matters to the civil and family divisions of the superior court for proceedings consistent with this decision. In the family division case, depending on the parties' requests, the family division shall reconsider its discovery rulings. Given our finding that the superior court erred in dismissing Wife's civil claims, the civil division shall allow discovery and conduct additional proceedings on Wife's tort claims. We express no opinion on the strength of Wife's claims for fraudulent inducement or negligent misrepresentation beyond our conclusion that the civil division's dismissal was improper based on the pleadings.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR

15